**FOLEY & LARDNER LLP**
JAMES D. NGUYEN, CA BAR NO. 179370
jnguyen@foley.com
2029 CENTURY PARK EAST, SUITE 3500
LOS ANGELES, CALIFORNIA 90067-3021
TELEPHONE: (310) 277-2223
FACSIMILE: (310) 557-8475

ATTORNEYS FOR PLAINTIFF IPARADIGMS, LLC

E-filing

ORIGINAL FILED
DEC - 6 2006
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| IPARADIGMS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, <br><br> PLAINTIFF, <br><br> V. <br><br> MCLEAN COMMITTEE FOR STUDENT RIGHTS, AN UNINCORPORATED ASSOCIATION OF THE COMMONWEALTH OF VIRGINIA, <br><br> DEFENDANT. | CASE NO. C06-07393 SI <br><br> ADR <br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

COMPLAINT FOR DECLARATORY RELIEF

LACA_779651.2

Plaintiff iParadigms, LLC ("iParadigms") allege as follows:

## INTRODUCTION

1. Plaintiff iParadigms needs declaratory relief from this Court to confirm the copyright legality of its Turnitin® system. Turnitin® is a proprietary technology system, which evaluates the originality of written works in order to prevent plagiarism. The Turnitin® system allows educators at schools and universities to quickly and effectively check — via an online system, rather than manually — whether written works submitted by students are original. To do this, the Turnitin® system makes a digital "fingerprint" of works submitted by students, and then digitally archives that fingerprint so it can be compared to the work of future students. Quite significantly, the Turnitin® system does **not** distribute, publish or otherwise make publicly available any student works. Because of its effectiveness in curbing plagiarism, Turnitin® is now used by thousands of academic institutions in over ninety countries worldwide, is used by millions of teachers and students, and receives nearly 100,000 student papers per day. Turnitin® thus serves a highly valuable educational purpose. Rather than infringing intellectual property rights, iParadigms is trying to protect the copyright interests of students and other authors by preventing plagiarism of the very student papers that Turnitin® receives.

2. In or around August 2003, McLean High School in McLean, Virginia decided to adopt the Turnitin® system. Now, over three years later, a group of students at McLean High School — represented by the McLean Committee for Student Rights — have contended that the Turnitin® system infringes copyrights in their written works. iParadigms needs a judicial declaration from this Court to confirm the copyright legality of the Turnitin® system, and allow iParadigms to continue providing — without any doubts caused by MCSR's unfounded claim — its highly valuable educational service to McLean High School.

COMPLAINT FOR DECLARATORY RELIEF

## JURISDICTION AND VENUE

3. Plaintiff iParadigms, LLC is a limited liability company organized under the laws of the State of California with its principal place of business in the State of California, County of Alameda, City of Oakland.

4. Plaintiffs are informed and believe, and on that basis allege, that defendant McLean Committee for Student Rights ("MCSR") is an unincorporated association of the Commonwealth of Virginia, made up of students at McLean High School in McLean, Virginia and individual members thereof.

5. This Court has original jurisdiction under 28 U.S.C. sections 1331 and 1338(a), because this action arises the U.S. Copyright Act, 17 U.S.C. sections 101 *et seq*. This Court also has original jurisdiction pursuant to 28 U.S.C. section 1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds $75,000.00 exclusive of interest and costs.

6. Venue is proper in this district under 28 U.S.C. section 1391(b) because: (1) members of the Defendant association have consented to this district's jurisdiction via an online User Agreement which provides that student users of Turnitin® (the online system at issue in this case) "consent to the exclusive jurisdiction and venue of courts in Alameda County, California, U.S.A. in all disputes arising out of or relating to the use of this [Turnitin] web site"; and (2) iParadigms' business operations which are at issue in this case occur in this district, and thus a substantial part of the events giving rise to iParadigms' claim occurred in this district.

## THE TURNITIN® SYSTEM

7. iParadigms has developed a proprietary technology system called Turnitin®, the world's leading online system to evaluate originality of works and to prevent plagiarism. The Turnitin® system allows educators at schools and universities to quickly and effectively check — via an online system, rather than

manually — whether written works submitted by students are original. Turnitin® helps ensure that students submit original work and receive honest grades, and helps ensure a level playing field for all students.

8. Schools and academic institutions make the choice about whether to use the Turnitin® system. For participating schools, students submit their written works to Turnitin® via a web-based system available at www.turnitin.com or via an integration between Turnitin® and a school's course management system. Before submitting their works to the online system, students create a user profile and must agree to a "click-wrap" user agreement displayed to them online. A copy of the User Agreement is attached hereto as Exhibit 1. The User Agreement is governed by the laws of the State of California, and provides that student users of Turnitin® "consent to the exclusive jurisdiction and venue of courts in Alameda County, California, U.S.A. in all disputes arising out of or relating to the use of this [Turnitin] web site."

9. Once a student work is submitted to Turnitin®, the Turnitin® system makes a "fingerprint" of the work by applying mathematical algorithms to its content. This fingerprint is merely a digital code.

10. Using the digital fingerprint made of the student's work, the Turnitin® system compares the student's work electronically to content available on the Internet (both currently and archived instances), student papers previously submitted to Turnitin®, and commercial databases of journal articles and periodicals. The Turnitin® system then produces an Originality Report for each submitted student work, which identifies the percentage of a student's paper which is not original. It is then up to the student's teacher or instructor to evaluate the Originality Report and address any issues with the student.

11. Furthermore, the Turnitin® system then digitally archives the student's submitted work so the work becomes part of the database used by Turnitin® to evaluate the originality of other students' works in the future. Thus,

this helps protect the student rights to their works, by helping to ensure that other students in the future do not plagiarize the works already submitted to Turnitin.®

12. Quite significantly, the Turnitin® system does **not** distribute, publish or otherwise make publicly available any student works. Nor does it prevent or restrict students from reusing or otherwise exploiting works submitted to Turnitin.®

13. Turnitin® serves a valuable educational purpose for academic institutions and their students. Because of its effectiveness in curbing plagiarism, Turnitin® is now used by thousands of academic institutions in over ninety countries worldwide, is used by millions of teachers and students, and receives nearly 100,00 student papers per day. Rather than infringing intellectual property rights, iParadigms is trying to protect copyright interests by students and other authors by preventing plagiarism of the very student papers that Turnitin® receives.

## MCLEAN HIGH SCHOOL ADOPTS TURNITIN®

14. In or around August 2003, the Fairfax County School Board in Fairfax, Virginia adopted the Turnitin® system. The Fairfax County School Board entered into an agreement with iParadigms to subscribe to the Turnitin® system. The Fairfax County School Board has since implemented the Turnitin® system at various schools within its governance, including McLean High School in McLean Virginia, and now successfully uses Turnitin® at 16 of its 18 high schools. At McLean School, the Turnitin® system has been implemented in classes for freshman and sophomore students, but not yet junior and senior students.

## NEED FOR JUDICIAL RELIEF

15. Defendant MCSR consists of various students at McLean High School and other individuals who are opposed to McLean High School's use of the

Turnitin® system. On November 15, 2006, over three years after McLean High School adopted the Turnitin® system counsel for defendant MCSR sent a letter to iParadigms complaining that iParadigms infringes the copyrights of student works which are submitted to the Turnitin® system. In that letter, MCSR alleged that iParadigms infringed the copyright interests of its student members by keeping a digital archive of student works. The MCSR claimed to represent sixteen (16) students at McLean High School, and demanded certain relief as to those sixteen students. If iParadigms would not agree to MCSR's demand for relief, MCSR threatened to file suit against iParadigms seeking injunctive relief, statutory damages, costs and attorney fees. A true and correct copy of that November 15, 2006 demand letter from MCSR is attached hereto as Exhibit 2. [The student names from the last page of the letter have been redacted.]

16. iParadigms disputes the contentions of the MCSR. First, iParadigms believes that its Turnitin® system does not infringe the copyright interests of any student members of MCSR (or the rights of any other students of McLean High School) and/or makes a fair use of the student works as permitted under the 17 U.S.C. § 107 of the U.S. Copyright Act. Second, iParadigms is informed and believes that ten of the sixteen student members of MCSR have **not** yet submitted any works to the Turnitin® system, and thus, as a matter of law, iParadigms could not have infringed, nor be infringing, any copyrights of those students. Thus, iParadigms believes that it has no liability to the MCSR or its members, and MCSR is not entitled to any relief.

17. A judicial declaration on these issues would serve the interests of justice. A declaration would avoid a multiplicity of actions by enabling the parties to understand their respective rights and duties with respect to the Turnitin® system, without the need for further litigation (for example, each time a student member of MCSR or other students at McLean High School disputes the lawfulness of Turnitin.®)

18. With greater understanding of how copyright law applies in the digital and online worlds, courts are routinely confirming that "use" of copyrighted works similar to that made by iParadigms (such as creating a digital fingerprint of the work, and retaining that fingerprint in a digital archive) is not infringing and/or constitutes a fair use. iParadigms would thus have no liability because the fair use doctrine, 17 U.S.C. § 107, is a complete defense to any infringement action the MCSR could bring related to student works submitted to Turnitin®.

## FIRST CAUSE OF ACTION

**(Declaratory Relief as to Student Works Submitted to Turnitin®)**

19. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 18 of this Complaint as if fully set forth herein.

20. There currently exists an actual controversy between iParadigms and MCSR concerning whether the Turnitin® system infringes copyright rights (if any) of the student members of MCSR who have submitted works to Turnitin.®

21. iParadigms contends that it does not infringe any copyright rights (if any) of students in MCSR or at McLean High School who have submitted their works to Turnitin® and/or that the Turnitin® system is making a fair use of such student works that is permissible under 17 U.S.C. § 107 of the U.S. Copyright Act.

22. The MCSR and its student members dispute the aforementioned contentions, as evidenced by the November 15, 2006 demand letter sent by MCSR. Declaratory relief is therefore appropriate.

## SECOND CAUSE OF ACTION

**(Declaratory Relief as to Student Works Not Submitted to Turnitin®)**

23. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 18 of this Complaint as if fully set forth herein.

24. There currently exists an actual controversy between iParadigms and

LACA_779651.2

| | |
|---|---|
| 1 | MCSR concerning whether the Turnitin® system infringes copyright rights (if any) |
| 2 | of the student members of MCSR who have <u>not</u> yet submitted any works to |
| 3 | Turnitin.® |
| 4 | 25. iParadigms contends that at least ten (10) student members of MCSR |
| 5 | have not yet submitted any works to the Turnitin® system. Accordingly, |
| 6 | iParadigms believes that it could not, as a matter of law, have infringed or be |
| 7 | infringing copyright interests (if any) of those MCSR students. |
| 8 | 26. The MCSR and its student members dispute the aforementioned |
| 9 | contentions, as evidenced by the November 15, 2006 demand letter sent by MCSR. |
| 10 | Declaratory relief is therefore appropriate. |

**PRAYER**

WHEREFORE, Plaintiff iParadigms, LLC pray for judgment as follows:

1. For a judicial declaration that its Turnitin® service (including digital fingerprinting and digital archival of fingerprints of student works) does not infringe copyrights (if any) to works submitted to Turnitin® by any student members of defendant MCSR or McLean High School and/or constitutes a fair use of such works pursuant to 17 U.S.C. § 107;

2. For a judicial declaration that iParadigms has not infringed and is not infringing the purported copyrights of any members of defendant MCSR (including at least ten students listed in MCSR's November 15, 2006 demand letter) who have <u>not</u> submitted any of their works to the Turnitin® system.

3. For costs of suit herein.

4. For such other and further relief as the Court deems just and proper.

DATE: DECEMBER 6, 2006

FOLEY & LARDNER LLP
JAMES D. NGUYEN

BY: _/s/ James Nguyen/_
JAMES D. NGUYEN
ATTORNEYS FOR PLAINTIFF **IPARADIGMS, LLC**

**EXHIBIT 1**

Turnitin and its services are maintained by iParadigms, LLC ["Licensor"], and offered to you, the user ["User"], conditioned on your acceptance without modification of the terms, conditions, and notices contained herein. Your use of this web site constitutes your agreement to all such terms, conditions, and notices.

**Personal and noncommercial use limitation**
This web site is for your personal and noncommercial use. You may not modify, copy, distribute, transmit, display, perform, reproduce, publish, license, create derivative works from, transfer, or sell any information, software, products or services obtained from this web site. A user may not market, rent, lease, or re-license the licensed programs or services, or use the licensed programs or services for third party commercial use, commercial timesharing, or service bureau use.

**Copyright and trademark notices**
All contents of this web site are: Copyright (c) 1998-2004 iParadigms, LLC, iParadigms Corporation and/or its suppliers. All rights are reserved. iParadigms, LLC and other names of iParadigms products and/or services referenced herein are trademarks or intended to be registered trademarks of iParadigms Corporation. Other product and company names mentioned herein may be the trademarks of their respective owners. The user agrees not to alter, merge, modify or adapt the Licensed Programs or Services, or the Documentation in any way or remove or obscure Licensor's copyright or trademark notices. In particular, the user agrees not to cause or permit the disassembly, recompilation, or reverse engineering of any Licensed Program. In jurisdictions where a right to reverse engineer is provided by law unless information is available about products in order to achieve interoperability, functional compatibility, or similar objectives, the user agrees to submit a detailed written proposal to Licensor concerning User's information needs before engaging in reverse engineering. Licensor is the owner of, or has the rights to distribute, all of the software components of the Licensed Programs or Services, the forms generated by the Licensed Programs or Services, and the Documentation for the Licensed Programs or Services. The Licensed Programs and the Documentation are also protected under applicable copyright laws and User's right to use the Licensed Programs and the Documentation is limited to the terms and conditions set forth in this Agreement. Any use of the Licensed Programs by the U.S. Government, including but not limited to any Educational Institutions under its jurisdiction or under the corresponding States' jurisdiction, is subject to 'restricted rights' as that term is defined in FAR 52.227-19(c)(2) or DFAR 252.227.7013(c)(1) (if used in a defense related agency). A web site user does not acquire any rights, express or implied, in the Licensed Programs, other than those specified in this Agreement.

**Liability disclaimer**
In no event does Licensor warrant that the licensed programs or services, related documentation, or other related services will satisfy a user's requirements, be without errors, or that all licensed program errors will be corrected. Operation of the licensed programs is not guaranteed to be uninterrupted and may be subject to technical upgrades, enhancements, improvements and revisions.

The information published and services offered on Turnitin may include typographical errors or inaccuracies. Changes are periodically added to the information to the web site.

iParadigms, LLC and/or its respective suppliers make no representations about the suitability of the information, software, products, and services contained on this web site for any purpose. All such information, software, products, and services are provided "as is" without warranty of any kind. iParadigms, LLC and/or its respective suppliers hereby disclaim all warranties and conditions with regard to this information, software, products, and services, including all implied warranties and conditions of merchantability, fitness for a particular purpose, title, and non-infringement. In no event shall iParadigms, LLC and/or its suppliers be liable for any direct, indirect, punitive, incidental, special, or consequential damages arising out of or in any way connected with the use of this web site or with the delay or inability to use this web site, or for any information, software, products, and services obtained through this web site, or otherwise arising out of the use of this web site, whether based n contract, tort, strict liability or otherwise, even if iParadigms, inc. Or any of its suppliers has been advised of the possibility of damages. Because some states/jurisdictions do not allow the exclusion or limitation of liability for consequential or incidental damages, the above limitation may not apply to you. exclusive remedies. User's exclusive remedy, and licensor's entire liability for any breach of warranty, shall be: for licensed programs or services at the option of the licensor - either correction of the error that caused the breach of warranty, or refund of the license fees (or the applicable proportion of the total fee thereof) paid to licensor for the non-performing licensed program, service, or re-performance of the services.

**No unlawful or prohibited use**
As a condition of your use of this web site, you warrant to iParadigms, LLC that you will not use this web site for any purpose that is unlawful or prohibited by these terms, conditions, and notices.

**Links to third party sites**
This Web site may contain hyperlinks to web sites operated by parties other than iParadigms, LLC Such hyperlinks are provided for your reference only. iParadigms, LLC does not control such web sites and is not responsible for their contents. iParadigms' inclusion of hyperlinks to such web sites does not imply any endorsement of the material on such web sites or any association with their operators.

**Modification of these terms and conditions**
iParadigms, LLC reserves the right to change the terms, conditions, and notices under which this Web site is offered.

**General**
This agreement is governed by the laws of the State of California, U.S.A. You hereby consent to the exclusive jurisdiction and venue of courts in Alameda County, California, U.S.A., in all disputes arising out of or relating to the use of this web site. Use of this web site is unauthorized in any jurisdiction that does not give effect to all provisions of these terms and conditions, including without limitation this paragraph.

You agree that no joint venture, partnership, employment or agency relationship exists between you and iParadigms, LLC as a result of this agreement or use of this web site.

iParadigms' performance of this agreement is subject to existing laws and legal process, and nothing contained in this agreement is in derogation of iParadigms' right to comply with law enforcement requests or requirements relating to your use of this web site or information provided to or gathered by iParadigms' with respect to such use.

If any part of this agreement is determined to be invalid or unenforceable pursuant to applicable law including, but not limited to, the warranty disclaimers and liability limitations set forth above, then the invalid or unenforceable provision will be deemed superseded by a valid, enforceable provision that most closely matches the intent of the original provision; the remainder of the agreement shall continue in effect.

This agreement constitutes the entire agreement between the user and iParadigms' with respect to usage of this web site and it supersedes all prior communications and proposals, whether electronic, oral, or written, between the user and iParadigms' with respect to usage of this web site. A printed version of this agreement and of any notice given in electronic form shall be admissible in judicial or administrative proceedings based upon or relating to this agreement to the same extent and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

Fictitious names of companies, products, people, characters, and/or data mentioned herein are not intended to represent any real individual, company, product, or event.

Any rights not expressly granted herein are reserved.

By using the Turnitin service, the user of Turnitin acknowledges that he or she has read this Agreement, understands it and agrees to be bound by its terms and conditions.

As provided in the Digital Millenium Copyright Act of 1998, we have designated the following individual for notification of potential copyright infringement regarding Web sites hosted by Turnitin:

John Barrie
510-287-9720 ext 227
510-444-1952 (fax)
legal@iparadigms.com

If you believe content hosted by Turnitin infringes a copyright, please provide the following information to the person identified above (17 U.S.C. §512)<BR
A physical or electronic signature of the copyright owner or authorized agent; Identification of the copyrighted work(s) claimed to have been infringed; Identification of the material that is claimed to be infringing or to be the subject of the infringing activity and that is to be removed or access to which is to be disabled, and Information reasonably sufficient to permit us to locate the material; Information regarding how we may contact you (e.g., mailing address, telephone number, e-mail address); A statement that the copyright owner or its authorized agent has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and A statement that the information in the notification is accurate, and made under penalty of perjury, and, if an agent is providing the notification, a statement that the agent is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

**EXHIBIT 2**

# ROBERT A. VANDERHYE
Attorney at Law
801 Ridge Dr.
McLean, VA 22101-1625
703-442-0422
703-790-1070 (fax)
ravar@nixonvan.com

November 15, 2006

<u>VIA Fax #1-510-444-1952/THEN MAIL</u>
Dr. John Barrie
iParadigms, LLC
1624 Franklin Street, 7th Floor
Oakland, CA 94612

RE: Turnitin.com; McLean High School

Dear Dr. Barrie:

I represent the McLean Committee for Student Rights (an unincorporated association of the Commonwealth of Virginia) made up of students at McLean High School [MHS] in McLean, Virginia, and individual members thereof.

As you are aware, freshman and sophomore students at MHS are — and in the future all students will be — required to submit unpublished manuscripts that they create to your Turnitin® system. You then archive those unpublished manuscripts in machine readable form, and put them into a permanent database of student authored documents. The archiving of these unpublished manuscripts is clearly copyright infringement. All of the students listed on the attached sheet require that you stop archiving their unpublished manuscripts immediately.

Your archiving of unpublished manuscripts is a clear violation of §106 of the Copyright Act [17 U. S. C.], and is not "fair use" under §107 of the Copyright Act. This is readily apparent from the statutes themselves, and existing case law. All four factors that are typically considered in evaluating fair use under §107 indicate no fair use. You should already have grave concerns in this area because the very Foley & Lardner legal opinion that you have posted on your website — and refer to in many written and oral communications — states those concerns. Page 7 of the web version of that opinion provides "The archival of a submitted work is perhaps the <u>most legally sensitive</u> aspect of the TURNITIN system." (emphasis added). In fact the very case cited by Foley & Lardner at the top of page 8 of the opinion — *Harper & Row v Nation Enterprises*, 105 S. Ct. 2218, 471 U. S. 539 (1985) — makes it clear that not only is your archiving "legally sensitive", it is clearly copyright infringement.

11.

Dr. Barrie
November 15, 2006
Page 2

So that it is not an issue in your future evaluation, I can assure you that the fact that students at MHS are required – under penalty of getting a "zero" on a class assignment – to submit manuscripts to your system is **not** an indication that they are agreeing to your archival of their unpublished manuscripts. The law in Virginia – and virtually everywhere else in the U. S. – is that performing an act, or signing a document, under duress negates any legal validity of the act or document. Duress is found whenever there is external pressure and internal loss of volition in response to outside compulsion. "Duress may exist whether or not the threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other and that the contract is obtained by reason of such fact." *6B Michie's Jurisprudence Duress and Undue Influence*, §§2-3 (Repl. Vol. 1985). The question of duress is evaluated in view of all of the surrounding circumstances, including age, capacity, situation, and relation of the parties. *Jacobs v Jacobs*, 237 S.E.2d 124, 218 Va. 264 (Va. 1977).

There can be no doubt that informing a minor at a public school, which the minor is required to attend and guaranteed the right to attend by law, that she/he will get zeros on all class writing assignments unless he/she submits the assignment to your service and allows you to convert her/his property to your own, is duress. It is clearly a wrongful act to require students to give up their property (be it intellectual or any other) in order to get the education they are guaranteed by the Commonwealth of Virginia.[1] Each student's free will is completely destroyed. Therefore this is a classic case of duress, and the fact that the listed students will be submitting manuscripts to your system cannot be considered by you as their agreement for you to archive their manuscripts and infringe their copyrights.

You consistently argue that your system and acts are appropriate as being covered by the "fair use" exception. As indicated above, an examination of the facts relating to your archiving in relation to existing law clearly illustrates that is incorrect.

That your act of archiving student submissions is not "fair use" is especially true since Turnitin® is taking unpublished manuscripts and in effect "publishing" them. Unpublished manuscripts have a higher degree of protection

---

[1] As stated by the Supreme Court in *Tinker v Des Moines*, 393 U. S. 503 (1969) "It can hardly be argued that either students or teachers shed their constitutional rights ... at the schoolhouse gates". This includes that they not be required to give up personal property at school to be converted to another's use. No one would have a right to make a student in a public high school in Virginia pay $5 to Coca Cola to get into school every day, and intellectual property rights are potentially much more valuable.

Dr. Barrie
November 15, 2006
Page 3

under the copyright law[2], as the first case cited by your attorneys on the subject, *Harper & Row v Nation Enterprises, supra*, makes clear (even though your attorneys ignored this aspect of *Harper & Row* in their opinion). In *Harper & Row* the Supreme Court found that the use of 300 words from an unpublished manuscript of former president Ford was not "fair use" despite the public interest in disclosing President Ford's analysis of world events. *Harper & Row* pointed out that under common law the "fair use" doctrine had no relationship to unpublished manuscripts. Even though a 1992 amendment to §107 (last sentence) states that the fact that a manuscript is unpublished does not alone mean there can be no "fair use", unpublished manuscripts are still given broad protection. See *Sundeman v Seajay*, 142 F.3d 194 (4th Cir 1998), decided six years after the 1992 amendment to §107 and specifically discussing it.

The first of the four factors given in §107 is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes". Even if you did not already admit at the MHS meeting on October 16, 2006 that your purpose is commercial, there would be no doubt that it is. You make money by selling your services. One of the selling points you use to entice and keep customers is that your database of student submissions is continuously increasing. The figures you used at the MHS October 16 meeting were about 80,000 student papers added to your database every day, and likely 100,000 per day in the future. You are thus clearly getting a commercial benefit from students' unpublished manuscripts that you archive.

The fact that your archived version of a student's unpublished manuscript is in machine readable form rather than in human readable form does not provide it with an exculpatory character. A work is transformative if it adds something new to the original. Your use adds nothing. It merely changes how the work is "fixed", that is on paper or in a machine. It is no different than if a copyrighted book were read on the radio, put in DVD form, or published in a different language. It is the same work. 17 U. S. C. §101 defines "copies" protected under the Copyright Act as material objects "in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." Existence in a computer in machine readable form is clearly a copy under this definition. *Mai Systems Corp v Peak Computer, Inc.*, 991 F.2d 511 (9th Cir 1993); *Advanced Computer Servs. of Michigan v Mai Systems Corp.*, 845 F. Supp. 356 (E D Va. 1994).

Therefore this first factor clearly indicates no "fair use".

---

[2] Including the right by the owner not to publish at all.

Dr. Barrie
November 15, 2006
Page 4

The second factor in §107 is the nature of the copyrighted work. As indicated above since the students' works are typically unpublished manuscripts, they are entitled to a heightened level of protection. *Harper & Row, supra.; Sunderman v Seajay, supra.* Further, many of the works have truly creative expressions, including fictional accounts, poetry, and metaphor. Thus for this reason too they are entitled to a heightened level of protection. *Gorman, Fact or Fantasy? The Implication for Copyright*, 29 J. Copyright Soc., 560, 561, 563 (1982). Therefore this factor clearly indicates no "fair use".

The third factor in §107 is the amount and substantiality of the portion used in relation to the copyrighted work as a whole. You input the entire work in each case. Therefore this factor clearly indicates no "fair use".

The fourth factor in §107 is the effect of the use upon the <u>potential market for</u> or <u>value of</u> (two different criteria) the copyrighted work.

With respect to "potential market for", there can be no doubt original term papers, research papers, and the like can be sold; but no one will buy a plagiarized paper. For example, ibuytermpapers.com purchases original high school students' papers for cash. However, they check for originality. If they check Turnitin.com, they will find it plagiarized, completely destroying its marketability.

Also, newspapers and magazines purchase articles from freelance writers all the time (as one of hundreds of examples see www.undercover-medicine.com), and have no age requirement for the submitter. If a student submits an unpublished manuscript used in a course at MHS, or used as the basis for a derivative work (specifically protected and authorized under §106(2)), and that is checked against Turnitin.com, again it will be found to have been plagiarized, completely destroying its marketability. Your statement at the MHS October 16 meeting that this last scenario could never happen is totally unconvincing. You have no positive knowledge of what present abilities magazines or newspapers have to use the student paper parts of your database, let alone what availability they might have in the future.

Further, if a student submits his/her essay prepared for a course at MHS in the World Bank's essay contest, it will come back as plagiarized, and she/he will have her/his essay disqualified.

With respect to "value of" the copyrighted work, the situation is even more serious. College essays submitted by college applicants are commonly run through Turnitin.com (as Mrs. Strauss pointed out at the October 16 MHS meeting). Therefore if an MHS student produces a derivative work from an unpublished manuscript she/he produced in an MHS course -- as he/she has

14

Dr. Barrie
November 15, 2006
Page 5

every right to do – that is used as a college essay, it will be found plagiarized. What chance does the student have of getting into that college then? Thus, not only is the "value of" the paper destroyed, there are potentially enormous consequential damages in the future. It is well known that getting into and graduating from prestigious colleges and universities greatly enhances one's earning ability, therefore there could be significant economic loss (perhaps even hundreds of thousands of dollars worth) from your archiving of a student's unpublished manuscript in this situation.

As yet another scenario related to the "value of" a copyrighted work, consider the situation where a student at MHS transfers to another high school next year, one that uses Turnitin®. The student wants to get on the school newspaper staff at his/her new school and produces a derivative work from a course work unpublished manuscript she/he created at MHS. The student submits the derivative work for publication consideration to the staff of the newspaper at the new school. The derivative work is run through your service, and found plagiarized by comparing it to the student's own MHS manuscript. The student then has no chance of getting on the staff of the new school's newspaper, again with potential economic consequences in the future.[3]

Therefore this fourth factor also clearly indicates no "fair use".

We know from the published details of your contract with the University of Maryland, and your statements at MHS on October 16, that you have the technical ability to purge a student's paper once reviewed, rather than archiving it. **To resolve this matter to my clients' satisfaction it is necessary that you purge from Turnitin.com all of the manuscripts of all of the students on the attached list within one week of submittal of each manuscript to Turnitin.com.**

Please provide me with your written assurance, by **December 7, 2006**, that you will proceed as requested in the preceding paragraph. If I have not heard from you by then, I will assume you do not agree to proceed as we have requested, and we will institute suit for copyright infringement in the U. S. District Court for the Eastern District of Virginia, Alexandria Division. Since there will be litigation if you do not comply it is necessary that you retain all attorney client communications with respect to this or related matters (since you have waived attorney client privilege we will be entitled to see all opinions, notes of conversations with your attorneys, etc.), and retain all e-mails, letters, reports,

---

[3] The fact that in these scenarios it MAY be possible to somewhat mitigate the consequences by getting more detailed information from you, MHS, or other sources, is irrelevant. The first impression is negative and may be impossible to recover from. Also, the organization may never even tell the student what happened, leaving no possibility for mitigation. Requiring the student to explain the situation in advance would also be impractical and prejudicial.

15

Dr. Barrie
November 15, 2006
Page 6

computer discs, or other documents that in any way relate to the relationship of copyright to your services, and your technical abilities to do what we ask. If litigation is necessary we will be seeking an injunction, statutory damages, costs, and attorney fees, all of which are provided for by the Copyright Act.

I look forward to hearing from you.

Sincerely,

Robert A. Vanderhye

Attachment

cc: Mrs. Jane K. Strauss
    Mr. Paul Wardinski

Dr. Barrie
November 15, 2006
Page 7

## ATTACHMENT – LIST OF McLEAN HIGH SCHOOL STUDENT REQUIRING PURGING OF THEIR UNPUBLISHED MANUSCRIPTS WITHIN ONE WEEK OF SUBMISSION TO TURNITIN.COM

**REDACTED**